WM. S. JONES, plaintiff in error, *vs.* EDWARD W. HARKER, defendant in error.

Under the decision of the Supreme Court of the United States, in Thompson *et al.*, vs. Riggs & Kerkhofer, (December term, 1866,) this Court is compelled to hold that the Act of Congress making certain United States Treasury notes a legal tender in payment of debts, is not unconstitutional, even as applied to a contract made in eighteen hundred and sixty.

Complaint. United States legal tender notes a Constitutional currency. Judge SNEED. City Court of Augusta. August term, 1866.

Edward W. Harker brought complaint against William

S. Jones in said Court, on Jones' promissory note for $850 00, dated Augusta, September 31st, 1860, and due one day thereafter.

Before this suit was commenced, (to-wit: on 17th January, 1866,) the defendant had tendered to the plaintiff the full amount due on the note up to date, in legal tender notes of the United States, and plaintiff had refused to accept the same in payment. Afterwards, on the 17th of August, 1866, plaintiff accepted said legal tender notes as a payment on account of said note.

The plea was, said facts, as payment and discharge.

Upon motion, in the nature of demurrer, the Court ruled out the plea, holding that the Act of Congress, making such treasury notes a legal tender, when applied to contracts made before the Act of Congress was passed, was unconstitutional and void.

The plaintiff then took a verdict for $600 30, with interest from 27th of August, 1866, the parties having agreed that that should be the verdict if the Court ruled out the plea.

The ruling of the Court, aforesaid, is assigned as error.

NOTE.—WARNER, C. J., did not preside in this case. It was argued while LUMPKIN, C. J., presided, but not decided till after his death.

BARNES & CUMMINGS, for plaintiff in error.

FRANK H. MILLER, for defendant in error.

HARRIS, J.

The question made in this record, as to the validity of the Act of Congress, of Februry, 1862, making certain treasury notes a legal tender, in the payment of debts to individuals, whilst not directly presented, and decided in the case of John W. Thompson and W. Thompson vs. Riggs & Kerkhofer, before the Supreme Court of the United States, at December term, 1866, was at least sufficiently pronounced upon to furnish a rule for our guidance. Our judgment here is exclusively predicated upon the judgment in that case; the

decisions of that Court, in the interpretation of the Constitution of the United States, are made obligatory upon the judgments rendered here.   We are constrained, therefore, to overrule the decision below and order a new trial.

In announcing the judgment of this Court, I feel that it is due to the deep conviction of my mind, to say plainly and unequivocally, that I do not believe that the power to make treasury notes or paper money a legal tender in the payment of all debts, resides in Congress.   No one pretends it is to be found among the enumerated powers; it is not fairly to be implied, though this has been attempted by elaborate argument in the case of the Metropolitan Bank vs. Van Dyke, 27, New York Reps., p. 400, from the power given to Congress to borrow money.   In this case it was held that the passage of the legal tender Act, was *a necessary and proper means* to the execution of that power.

I am one of those who believe, from several clauses in the Constitution, that the framers of that instrument, looked to hard money, coin of the precious metals, and to nothing else, as a legal tender in the payment of debts.   This inference finds its sanction in the prohibition, on the States, against coining money, or making anything a legal tender except gold and silver, as, also, from the grant of an exclusive power to Congress to coin money, and to regulate the value of foreign coin.

Whilst the power given to Congress to borrow money, is an important one, and necessary to be used occasionally, it seems very strange that a far greater power, pervading all the transaction of life of trade and commerce, and by all ages and sexes of people, should be subordinated, by construction, as a *means* to an *end;* that a power not given or inferable, properly, should be thus used to give increased value to the notes of the Government.   That a certain relation does exist between the value of the paper, put on the market, and making that paper a legal tender—making it *money*, equivalent to *coin*—may be admitted, but all other powers, than those enumerated in the Constitution, are not given incidentally *as means* to effectuate the granted powers.   For if this

is so, the inevitable result would be that the Constitution was a grant of all powers whatever, at the discretion of Congress in the *choice of means.* This mode of interpretation produces the absurdity of a Constitution enumerating and limiting the powers to be exercised by Congress, and, at the same time, sanctioning the unlimited discretionary use of all other powers not given *as means* to effectuate the enumerated powers. It will be a difficult task to prove that the General Government has any limitation, whatever, upon its granted powers, if there be no restriction upon the use of other powers, as means. The means used must be necessary and proper; as the powers granted are limited, the means are necessarily so. This relation between means and ends must be strictly preserved, or the Federal Government will become one of unlimited powers.

The legal tender Act was a war measure. If, by any kind of reasoning, a violation of the Constitution could be justified as a necessity, temporarily, that necessity having ceased, with the war, it should have been blotted from the Statute Book, and not have been retained as it has been to furnish an alarming precedent for usurped powers in future.

It should have been repealed, if for no other reason, the all unanswerable one which experience always has furnished, and always will, if legislators would heed the lesson, *that no legislation can ever regulate the value of currency.* There is no algebraic process by which Government notes can be made equal to coin. The attempt is not only a folly, but a fraud on the people—as fully dishonest as the debasement of coin, so many instances of which are to be found in the history of continental nations.

It occurs to me that when the legal tender Act was passed, its advocates could more plausibly have derived the power to enact it from the war power, than from that to borrow money. The war power involved the raising and support of armies, levying of taxes, purchase of arms, food, clothing, etc. Under this power, construed as other powers are by Congress, what was there to prevent the General Government from purchasing and cultivating plantations to raise

corn, wheat and rice, establishing manufactories to make clothing and blankets, for the armies, purchasing and working tanneries, to supply leather for harness and for shoes, erecting foundries, for the making of iron into the many forms in which that metal should be needed? In fine, why not, under this power, buy up the gold mines throughout the States, work them with corps of employees, so as to procure the precious metal for coinage, so as with it to procure the necessaries to carry on war, redeem its treasury notes, or maintain its credit? What cannot Congress do, if, under such a power, it might employ such means in its exercise? Under this power it seems to me that the legal tender Act could be more easily sustained than the one from which the attempt has been made to derive it.

This mode of construing the Constitution, and employing any and all means at the discretion of Congress in carrying out its acknowledged powers, makes the powers of Congress unlimited, and subverts the Constitution itself.

I have not intended to discuss the question whether Congress can, constitutionally, declare anything but gold and silver coin a legal tender.

It would be a useless labor now. I have accompanied the annunciation of the judgment of this Court, reversing the decision below, with these comments, simply to put myself right, and in an enduring form on the record, that at a future day, should the Constitution be replaced on its ancient pedestal, it may appear that in the decision of this case, my action was controlled by laws I could not disobey, whilst my convictions remained that the legal tender Act was an unauthorized exercise of power.

Let the judgment be reversed.